Kinnan v. Wight.

MARY L. KINNAN, appellant,

*v.*

JAMES W. WIGHT, executor, respondent.

1. An executor may pay any claim against the estate, which he is satisfied is just, without requiring a statement of the items thereof, or that it be sworn to.

2. An agreement among all the parties interested in an estate, whereby one obtained a discharge from her indebtedness to the estate, and another received payment from the estate for services to the testator, estops the former from excepting to the executor's account because of such payment.

3. Where an executor has, by retainer, satisfied his own claim against the estate, the orphans court, in passing his account, has jurisdiction to inquire into the validity of the claim, and the legality of his action in retaining therefor.

Appeal from decree of Monmouth orphans court.

*Messrs. Robbins & Hartshorne,* for appellant.

NOTE.—An executor or administrator's right of retainer at common law is not forfeited by the statute requiring an equal distribution of the assets among the creditors of the estate, *Berry* v. *Graddy, 1 Metc. (Ky.) 553;* nor by the statute of frauds, *Ibid.;* nor by the act abolishing the distinction between specialty and simple contract debts, *Crowden* v. *Stewart, L. R. (16 Ch. Div.) 368;* nor by the act in reference to secured and unsecured creditors, *Lee* v. *Nuttall, L. R. (12 Ch. Div.) 61;* nor by instituting a creditor's suit, wherein he represents himself and all the other creditors, *Campbell* v. *Campbell, L. R. (16 Ch. Div.) 198;* nor by submitting to account in the ordinary form, *Ibid.*

If the estate be insolvent, he can only come in *pro rata* with the other creditors, *Smith* v. *Bryant, 60 Ala. 235; Jenkins* v. *Jenkins, 63 Ind. 120; Stevenson* v. *Schriver, 9 Gill & Johns. 324; Payne* v. *Pusey, 8 Bush 564.*

He need not file his claim with the probate court, nor present it to himself for allowance, *Sanderson* v. *Sanderson, 17 Fla. 821; State* v. *Reigart, 1 Gill 1; French* v. *Winsor, 24 Vt. 402; Miller* v. *Irby, 63 Ala. 477;* unless its amount or justness be disputed, *Middleton* v. *Middleton, 8 Stew. Eq. 115; Hoch's Appeal, 21 Pa. St. 280; Ashton* v. *Miles, 49 Iowa 564; Holly's Estate, 5 Allen (N. B.) 406.*

Kinnan v. Wight.

*Mr. J. Chetwood*, for respondent.

THE ORDINARY.

The appeal in this case is from a decree of the orphans court of Monmouth county, upon the final account of James W. Wight, acting executor of his father, Richard Wight, deceased. By the will of the latter, his estate, after the payment of his debts and funeral expenses, was given to his children, Catharine, James, Ann, Mary, Jacob and Margaretta, in equal shares, with substitution of their children in their stead in case they should predecease him, and with limitation over to the testator's surviving children of the share of any of his children who should die, leaving no children, at any time before the provisions of the will should have been carried out. Power was given to the executor to convert the personal estate into cash, and apply it to the payment of the testator's debts and funeral expenses. Also to sell and convey the real property, and apply so much of the proceeds as might be necessary for the purpose, to pay any part

In some states, he is, by statute, required to present his claim and proceed thereon the same as any other creditor, *McLaughlin* v. *Newton, 53 N. H. 531; Flood's Case, 16 Abb. Pr. (N. S.) 407, Smith* v. *Christopher, 6 T. & C. (N. Y.) 288; Barras* v. *Barras, 4 Redf. 263; Keller* v. *Stuck, 4 Redf. 294; Underhill* v. *Newburger, 4 Redf. 499; Gardner's Case, 5 Redf. 14; Burnett* v. *Noble, 5 Redf. 69; Kearney* v. *McKeon, 85 N. Y. 136; Williamson* v. *Anthony, 47 Mo. 299; Wright* v. *Wright, 72 Ind. 149; Crosby's Estate, 55 Cal. 574; Abbe* v. *Norcott, 8 N. H. 51; Tuttle* v. *Robinson, 33 N. H. 104; Watson* v. *Watson, 58 Md. 442.* See *Chidester* v. *Chidester, 42 Ind. 469.*

After his resignation, an administrator occupies the same position towards the estate as any other creditor, *Smith* v. *North, 13 Jur. 998; Fort* v. *Battle, 13 Sm. & Marsh. 133; Smith* v. *Watkins, 8 Humph. 331;* but see *Prentice* v. *Dehon, 10 Allen 353.* He may retain after revocation of his letters, *Blackborough* v. *Davis, 1 Salk. 38.* His assignee may proceed as any other creditor, *Nelson* v. *Stollenwerck, 60 Ala. 140; Snyder* v. *Snyder, 96 N. Y. 88;* see *Lowe* v. *Peskett, 16 C. B. 500; Chavez* v. *Schmidt, 2 C. E. Gr. 257; Morrison* v. *Page, 9 Dana 428.* He cannot assign his individual claim to himself as executor, *Schreyer* v. *Holbarrow, 26 Hun 468;* nor confess judgment for the amount of his claim to one to whom the decedent owed nothing, *Bonistiel* v. *McMaster, 6 U. C. Q. B. (O. S.) 32; Hubbard* v. *Hubbard, 16 Ind. 25.* See, also, *Phillips's Case, 6 N. J. L. J. 371; 17 Am. Law Rev. 514.*—REP.

of the debts and funeral expenses which might remain unpaid after applying the proceeds of the personal estate thereto. The testator's son James and daughter Catharine were appointed executors. The will was made in March, 1864. The testator died July 7th, 1876, and letters testamentary were granted on the 27th of the latter month to James, the survivor of Catharine, who died in her father's lifetime. The appellant is the testator's daughter Mary. In the summer of 1876, a very few days after the will was proved, suit was begun in New York by Richard W. Van Benschoten and others against James and others, for partition of the land of the testator in the city of New York, and attacking the will as invalid. The result of this litigation was a compromise made by Catharine and Margaretta, with the consent of James, by which they three agreed to pay a certain sum of money in extinguishment of the claims of their adversaries, whether those claims were under the will or otherwise.

This settlement was carried out, and thereupon the three, Mary, Margaretta and James, became entitled to the whole estate. To raise the money to pay the amount agreed upon, it was necessary to mortgage or sell part of the real estate. A house and lot in West Thirteenth street, in New York, already mortgaged by the testator for $3,000, was accordingly conveyed by James, as executor, to Mary and Margaretta, and they thereupon conveyed to him individually one-third thereof, and the three then mortgaged the property for $5,000, out of which the $3,000 mortgage and interest, and all other encumbrances on the property, and the expenses of the loan, were paid, and the balance applied to the payment of the money which it had been agreed should be paid in compromise.

Margaretta was attorney in fact for her father for about eight years before his death. As such, or as agent for him, she advanced money to her sister Mary, the appellant, and took her promissory notes therefor. They and a book account against Mary in favor of the testator amounted, with interest, to from $2,500 to $3,000 at the time of his death. It appears that in the spring of 1880 (the testator died in 1876) it was agreed

between Mary and Margaretta that the former should be discharged from all liability to the estate, and that the latter should receive $1,000 from the estate for her services as attorney for the testator. Accordingly, on the 12th of April in that year, Margaretta signed a paper for Mary, requesting James, as executor, to relinquish all claims of the estate against Mary, and Mary, on the other hand, signed one, in which she requested him, as executor, to pay to Margaretta out of the estate, $1,000 for her services as attorney for her father. James appears to have consented and agreed to this arrangement between them, and it was acted upon accordingly.

Margaretta had, before the testator's death, borrowed money of James to be used in her father's business, and had given him notes signed with her father's name by her as his attorney in fact, and James had also an account of about $1,700 against his father for board &c.

The appellant objects to various items of disbursement in the executor's account, on the ground that the bills or claims for which the payments were made were not sworn to, and that the items of the demands therein are not given. The estate was not insolvent. The executor had a right to pay any claim against it which he knew or became satisfied was just, and he was under no obligation to require either a statement of the items or that the claim be sworn to.

There are objections to the allowance of money paid for penalties upon taxes on the real estate; and it is also urged that some items of payment are twice charged in the account, whereas they should have been charged but once only. I do not find any ground for reversing the decision of the orphans court in reference to those matters.

And so, too, of the charges and credits made in reference to the litigation in New York and the settlement thereof, and the objection that the executor ought to be charged with money in respect of rents of the real estate not collected by him.

The agreement that Margaretta should have $1,000 for her services as attorney in fact of her father, was made by all the parties interested in the estate. The appellant, in consideration

Kinnan v. Wight.

of her consent to it, obtained a discharge of the large debt due to the estate from her.    The fact that she made the agreement estops her from objecting to the allowance of the payment in the executor's account.    Moreover, it may be added, the amount thus allowed to Margaretta for her services in attending to her father's business (the evidence shows she took care of him also in his old age) for about eight years, was by no means excessive.

As to the respondent's demand against the estate, as before stated, it was upon notes and book account.    The former were signed with the testator's name by Margaretta as his attorney in fact.    It is argued that she had no authority under her power of attorney to sign notes for her father, because by its terms that instrument gave her authority only to do and perform all such acts as the grantor of the power himself might do in and about the care of his real and personal estate, and renting and collecting the rents of the former, and also to manage and control his general business.    She acted as his agent in all the matters mentioned in the power, and, in the transaction of the business, found it necessary to borrow money for him for the purposes thereof.

money which she so borrowed was in fact applied to those ⊥rposes.    She must be regarded as his agent in borrowing the money.    In this proceeding in reference to the executor's account, the borrowing of the money has been proved by the agent herself.    So that that part of the respondent's debt which is represented by the notes is established without them, and they are at least evidence of the borrowing of the money.    Most of the rest of the respondent's demand consists of charges for board of the testator and Margaretta at his house for about five years just before the testator's death.  ` Margaretta was, as before stated, her father's attendant.    That part, as well as the rest of the claim, is satisfactorily established.    The executor and Margaretta, as agent for her father, had a settlement at the close of December, 1877, of the accounts for board &c., up to the 1st of January, 1875, and she then gave him a note for the balance due him, signing it with her father's name, by her as attorney in fact.

But it is urged that the orphans court had no jurisdiction to try the question of the respondent's claim against the estate, be-

cause the claim was that of the executor himself. The right of retainer exists by mere operation of law. Where an executor exercises it, he does so subject to inquiry in the orphans court or other tribunal which passes upon his account as to the validity of his claim, and such court has jurisdiction to pass upon the legality of his action in retaining for his debt. *Dolman* v. *Cook, 1 McCart. 56.* Nor is there any reported case in this state holding the contrary doctrine. *Middleton* v. *Middleton, 8 Stew. Eq. 115,* was not a case of retainer. An executor who had not and never had had any part of the estate in his hands, filed exceptions to the account of his co-executors, on the ground that they had refused to allow a claim which he made against the estate. It is obvious that the action of the orphans court in that case, in allowing the claim, was in fact the trial of and adjudication upon a demand against the estate which the executors had refused to allow. *Gray* v. *Gray* (decided in 1880), which was also referred to on the argument by the appellant's counsel, was a case in the court of chancery upon the claim of an executor, who, after the orphans court had refused to pass upon his claim, on the ground of want of jurisdiction, filed his bill to establish his demand. The question of jurisdiction in the orphans court was not raised in the court of chancery, nor in the court of last resort.

The decree of the orphans court will be affirmed in all respects. No costs of the appeal will be awarded to either side.